UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| LLOYD E. DRUMM | * | CIVIL ACTION |
| VERSUS | * | NO. 25-2223 |
| CAROLINE E. DRUMM, ET AL. | * | SECTION "O" (2) |

## ORDER AND REASONS

Two matters are pending before me for determination on referral from the Honorable Brandon S. Long pursuant to 28 U.S.C. § 636(b)(1)(A): (1) Defendants Caroline E. Drumm ("Mrs. Drumm") and Hughes D. Drumm, Jr.'s ("Hughes") *Ex Parte* Motion to Enroll as Counsel of Record and (2) Plaintiff Lloyd E. Drumm's ("Lloyd") construed Motion to Disqualify Counsel. ECF No. 18; No. 20; No. 21.  Defendant Hughes timely filed and Opposition Memorandum to Plaintiff Lloyd's motion, and Plaintiff Lloyd timely filed a Reply.  ECF No. 24; No. 25.  No party requested oral argument in accordance with Local Rule 78.1, and the Court agrees that oral argument is unnecessary.

Having considered the record, the submissions and arguments of counsel, the applicable law, Plaintiff Lloyd E. Drumm's request for order compelling production is DENIED AS PREMATURE and Defendants Mrs. Drumm and Hughes D. Drumm, Jr.'s *Ex Parte* Motion to Enroll as Counsel of Record and Plaintiff Lloyd E. Drumm's Motion to Disqualify Counsel are GRANTED IN PART AND DENIED IN PART, for the reasons stated herein.

## I.    BACKGROUND

On March 23, 2017, Mrs. Drumm executed a general power of attorney (the "2017 Power of Attorney") granting both her sons, Lloyd and Hughes, independent authority to, among other things, "conduct, manage, and transact [her] business and personal financial matters" and "appear

1

before all courts and . . . prosecute [and] defend . . . ."  ECF No. 1-2 at 1-2.  She also allegedly executed a will in 2023 (the "2023 Will") naming Lloyd as the sole executor and bequeathing her estate equally between her sons after a superior special bequeath to Lloyd in an amount equal to Hughes' outstanding debt to Mrs. Drumm (alleged to be more than $350,000).  ECF No. 1 ¶ 16.  Mrs. Drumm suffered a stroke in June 2024 and is alleged to no longer be able to manage her health, well-being, and finances due to the resulting dementia.  ECF No. 1 ¶¶ 17-18, 34; No. 1-1 (2025 psychiatric report); *see also* ECF No. 19-1 at 3, 12 (2025 neuropsychological evaluation).

Plaintiff Lloyd filed suit challenging acts of his brother, Defendant Hughes, as legal representative of Mrs. Drumm  pursuant to LA. REV. STAT. § 9:3851.  ECF No. 1.  Although § 9:3851(B) requires the plaintiff (Lloyd) to name the principal (Mrs. Drumm) as a defendant to this suit, Lloyd attacks only the acts of Hughes as representative.  Specifically, Lloyd alleges that, from July 2024 through early October 2025, Hughes used more than $110,000 from Mrs. Drumm's accounts for his personal benefit.  ECF No. 1 ¶¶ 1, 26-27.[1]

Lloyd sought a temporary restraining order and preliminary injunction to enjoin Hughes from exercising all powers under the 2017 Power of Attorney.  ECF No. 4.  The parties resolved the TRO by consent before the hearing.  ECF No. 10.  In the consent order, dated November 4, 2025, Judge Long ordered them to address Mrs. Drumm's role in the suit and whether she required separate counsel or could be represented by the same attorney representing Hughes.  ECF No. 12.

Hughes is represented by his long-time personal attorney Eric Oliver Person.  ECF No. 1 ¶ 23; No. 24 at 1-2.  Person has provided legal services to Mrs. Drumm "from time to time," and he moved to enroll as counsel of record for both Mrs. Drumm and Hughes.  ECF No. 24 at 2; No.

---

[1] After filing suit, Lloyd learned that Mrs. Drumm signed two new wills, one in 2024 and another in 2025.  ECF No. 20 at 5-6; *see* ECF No. 20-1 at 9 (Defendants' counsel acknowledging he has the wills).  To date, Lloyd has not sought to amend his pleadings to add any claims relating to same.

18.[2]  Lloyd alleges that Person began representing Mrs. Drumm after Hughes dismissed her longtime estate attorney Orr Adams, following a June 2025 conference with Lloyd, Hughes, and Mrs. Drumm  convened by Adams to discuss Hughes' conduct.  ECF No. 1 ¶¶ 22-23.  Hughes argues that, although no relief is sought against Mrs. Drumm, a judgment on Lloyd's Complaint may restrict her legal rights.  *See* ECF No. 19 at 1-8.

## II.    <u>THE MOTION TO DISQUALIFY</u>

Lloyd requests that the Court (1) disqualify Person from representing Mrs. Drumm due to an incurable conflict of interest, (2) appoint separate and independent counsel for her, and (3) disqualify Person from representing Hughes in this matter given his materially adverse interest to "former" client Mrs. Drumm.  ECF No. 20 at 2.[3]  Lloyd asserts that Person's simultaneous representation creates a concurrent conflict of interest under Rule 1.7 of the Louisiana Rules of Professional Conduct ("LRPC") due to alleged financial abuse of the principal by the representative.  *Id.* at 7, 9-12.  He further asserts this conflict is not waivable under Rule 1.7(b)(1) and (3), and Mrs. Drumm cannot give informed consent due to her impaired mental capacity.  *Id.* at 12-16.

Lloyd also asserts that Person's current representation of Hughes violates Rule 1.9.  *Id.* at 16.  Lloyd alleges that, during the drafting of the parties' proposed consent order, Person stated he prepared new wills that Mrs. Drumm executed on September 29, 2024, and October 27, 2025, removing the equalizing bequest from the 2023 Will.  *Id.* at 5-6.  Lloyd asserts that this "prior" representation of Mrs. Drumm and current representation of Hughes both concern Mrs. Drumm's

---

[2] Person appeared on behalf of both Defendants at the injunction hearing but responded to the pending motions on behalf of Hughes alone.  ECF Nos. 7, 19.

[3] Given that the 2017 Power of Attorney appears to bestow both sons with the authority to act on Mrs. Drumm's behalf with regard to legal matters (ECF No. 1-2 at 1-2), it is unclear why Lloyd lacks the authority to terminate Person's representation of Mrs. Drumm and hire separate counsel for her.

estate, donative intent, and mental capacity, and Person will have to cross-examine Mrs. Drumm regarding her intent and capacity for the 2024 and 2025 Wills. *Id.* at 16. Lloyd also asserts that Person will likely be a material witness regarding Mrs. Drumm's capacity and any undue influence in relation to the 2024 and 2025 Wills, and thus, must be disqualified under Rule 3.7. *Id.* at 17. Lloyd also asks the Court to compel Person to produce the 2024 and 2025 Wills. *Id.* at 6.

In Opposition, Hughes argues that Judge Long improperly converted Lloyd's memorandum into a motion to disqualify counsel. ECF No. 24 at 1.[4] He then asserts there is no conflict between Mrs. Drumm and Hughes because, while Mrs. Drumm is a named defendant, Lloyd has filed his Complaint on her behalf and has not filed any pleadings requiring her to respond, and whether Person can represent both depends on Mrs. Drumm's capacity. *Id.* at 2, 5. He further argues that Person has no conflict because their interests are not adverse because all of his acts were approved by Mrs. Drumm. *Id.* at 5-6.

In Reply, Lloyd reiterates his arguments regarding Person's disqualification. ECF No. 25 at 1-8. He separately notes that he propounded discovery requests for the 2024 and 2025 Wills. *Id.* at 8-9.

### III.    APPLICABLE LAW AND ANALYSIS:  MOTION TO COMPEL

Initially, Lloyd has not demonstrated that he is entitled to a Rule 37 order compelling production of any documents.

---

[4] Contrary to Hughes' assertion, Lloyd specifically requested that Person be disqualified from representing both Hughes and Caroline. ECF No. 20 at 2. Moreover, Judge Long's treatment of the filing is consistent with the Fifth Circuit's longstanding direction that district courts are to "determine the true nature of a pleading by its substance, not its label." *Armstrong v. Capshaw, Goss & Bowers, LLP*, 404 F.3d 933, 936 (5th Cir. 2005) (citing *Edwards v. City of Hou.*, 78 F.3d 983, 995 (5th Cir. 1996) (en banc) ("[W]e have oft stated that 'the relief sought, that to be granted, or within the power of the Court to grant, should be determined by substance, not a label.'" (quoting *Bros. v. W.E. Grace Mfg. Co.*, 320 F.2d 594, 606 (5th Cir. 1963))) (finding district court properly treated plaintiff's motion for leave to amend his complaint in intervention as motion for leave to intervene as plaintiff's motion sought to justify his status as an intervenor in federal court).

Rule 34 authorizes a party to request documents or items within another party's possession, custody or control.  FED. R. CIV. P. 34(a)(1).  Generally, the responding party must respond and either produce responsive documents or specify a reasonable time within which same will be produced within 30 days of service.  *See* FED. R. CIV. P. 34(b)(2)(A).  If a party fails to respond fully to requests for production made pursuant to Rule 34 in the time allowed by the Federal Rules of Civil Procedure, the party seeking discovery may move to compel production under Rule 37. FED. R. CIV. P. 37(a)(3)(B)(iv).

A Rule 37 motion "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."  *Id.* at 37(a)(1).  "Conference requirements encourage resolving discovery disputes without judicial involvement. Failure to confer or attempt to confer may result in unnecessary motions. When the court must resolve a dispute that the parties themselves could have resolved, it must needlessly expend resources that it could better utilize elsewhere."[5]  The conference requirements are no "empty formality."[6]  The failure to engage in the required meet and confer before filing a motion to compel constitutes sufficient reason in itself to deny the motion.[7]  Indeed, courts routinely deny discovery motions for failure to comply with Rule 37(a)(1).[8]

---

[5] *Brown v. Bridges*, No. 12-4947, 2015 WL 11121361, at *3 (N.D. Tex. Jan. 30, 2015) (internal quotations and citations omitted); *see also Motions & Oral Argument*, The Honorable Donna Phillips Currault, UNITED STATES DISTRICT COURT EASTERN DISTRICT OF LOUISIANA, http://www.laed.uscourts.gov/judges-information/judge/honorable-donna-phillips-currault (last visited November 16, 2022).

[6] *Riverbend Env't Servs., LLC v. Crum & Forster Specialty Ins. Co.*, No. 22-31, 2023 WL 2563228, *3 (S.D. Miss. Mar. 17, 2023).

[7] *Shaw Grp. Inc. v. Zurich Am. Ins. Co.*, No. 12-257, 2014 WL 4373197, at *3 (M.D. La. Sept. 3, 2014) (citations omitted); *see also McAllister v. McDermott, Inc., No.* 18-361, 2019 WL 6065704, at *2 (M.D. La. Nov. 15, 2019) (citing *Forever Green Athletic Fields, Inc. v. Babcock Law Firm, LLC*, No. 11-633 (M.D. La. July 2, 2014) (denying motion to compel where defense counsel made a single attempt by email to meet and confer and did not do so in a good faith effort to resolve the dispute without court intervention)).

[8] *See, e.g.*, *Greer v. Bramhall*, 77 F. App'x 254, 255 (5th Cir. 2003) (finding the district court did not abuse its discretion in denying motion to compel for failing to follow Rule 37); *D.H. Griffin Wrecking Co. v. 1031 Canal Dev., L.L.C.*, No. 20-1051, 2020 WL 8265341, at *3 (E.D. La. Apr. 16, 2020) (citations omitted).

Although Lloyd asks the Court to compel production of the wills, he has not attached any Request for Production or Subpoena, has not established when same was served, and has not established a failure to respond within the applicable thirty-day deadline.  In addition, he has not demonstrated a proper Rule 37 conference.  As such, the request for court intervention to obtain discovery embedded in his memoranda is premature and must be denied without prejudice.[9]

## IV.    APPLICABLE LAW AND ANALYSIS:  DISQUALIFICATION

A "mandatary is bound to fulfill with prudence and diligence the mandate he has accepted. He is responsible to the principal for the loss that the principal sustains as a result of the mandatary's failure to perform."[10]  "Therefore, it follows that a mandatary owes fiduciary duties to the principal[,]"[11] as well as a representative because a "procuration is subject to the rules governing mandate" to the extent they are compatible with its nature.[12]  "A cause of action for breach of fiduciary duty requires proof of fraud, breach of trust, or an action outside the limits of the fiduciary's authority."[13]  "Powers of attorney are construed strictly and no special authority is implied by the general terms of a procuration except ordinary powers of administration."[14]

---

[9] *Acosta v. Northrop Grumman*, No. 02-3206, 2003 WL 21056878, at *1 (E.D. La. May 5, 2003) (denying as premature motion to compel filed before plaintiff propounded discovery and waited for expiration of the thirty-day response period); *see also Esquivel v. Eastburn*, No. 20-00377, 2022 WL 757243, at *1 (W.D. Tex. Mar. 11, 2022) (denying as premature motion to compel before expiration of the response deadline).

[10] *D & J Tire, Inc. v. Hercules Tire & Rubber Co.*, 598 F.3d 200, 207 (5th Cir. 2010) (quoting LA. CIV. CODE art. 3001).

[11] *Id.* (quoting *Sampson v. DCI of Alexandria*, 970 So. 2d 55, 59 (La. App. 3 Cir. 2007); *Gerdes v. Est. of Cush*, 953 F.2d 201, 205 (5th Cir. 1992) ("[A] mandatory is a fiduciary . . . .")).

[12] LA. CIV. CODE art. 2988.  "A procuration is a unilateral juridical act by which a person, the principal, confers authority on another person, the representative, to represent the principal in legal relations."  LA. CIV. CODE art. 2987.

[13] *Sampson*, 970 So. 2d at 60-61 (quoting *Beckstrom v. Parnell*, 730 So. 2d 947-48 (La. App. 1 Cir. 1998) (quoting *Gerdes*, 953 F.2d at 205)).

[14] *In re Succession of Frazier*, 349 So. 3d 634, 637 (La. App. 2 Cir. 2022) (citing *Noel v. Noel*, 225 So. 3d 1114, 1121 (La. App. 3 Cir. 2017)).

A.    **Standard for Disqualification**

A motion to disqualify is a substantive motion affecting the rights of the parties and is determined by applying standards developed under federal law.[15]   Disqualification cases are governed by state and national ethical standards adopted by the court.[16]   When considering attorney disqualification, the court considers (1) the local rules in the district; (2) the American Bar Association's ("ABA") Model Rules of Professional Conduct; (3) the ABA's Model Code of Professional Responsibility; and (4) the state rules of conduct.[17]   Local and national ethical canons are useful guides, but they are not controlling.[18]

Disqualification rules are not mechanically applied.[19]   "All of the facts particular to a case must be considered, in the context of the relevant ethical criteria and with meticulous deference to the litigant's rights."[20]   Applying an exacting standard for a motion to disqualify is necessary to protect a party's right to counsel of choice and to discourage the use of such motions as a trial tactic.   The court must be conscious of its responsibility to preserve a reasonable balance between the need to ensure ethical conduct on the part of lawyers appearing before it and other social interests, such as the right of a party to counsel of choice and an attorney's right to freely practice law.[21]   Depriving a party of the right to be represented by the attorney of his or her choice is a penalty that must not be imposed cavalierly[22] or without careful consideration.[23]

---

[15] *F.D.I.C. v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1311-12 (5th Cir. 1995); *In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir. 1992).
[16] *F.D.I.C.*, 50 F.3d at 1311–12 (quoting *In re Am. Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992)).
[17] *Id.* at 1312; *Horaist v. Dr.'s Hosp. of Opelousas*, 255 F.3d 261, 266 (5th Cir. 2001).
[18] *F.D.I.C.*, 50 F.3d at 1314.
[19] *Johnston v. Harris Cnty. Flood Control Dist.*, 869 F.2d 1565, 1569 (5th. Cir. 1989); *Church of Scientology of Cal. v. McLean*, 615 F.2d 691, 693 (5th Cir. 1980).
[20] *F.D.I.C.*, 50 F.3d at 1314.
[21] *Woods v. Covington Cty. Bank*, 537 F.2d 804, 810 (5th Cir. 1976) (citing *Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 564–65 (2d Cir. 1973)); *see also F.D.I.C.*, 50 F.3d at 1313 (citing *Woods*, 537 F.2d at 813).
[22] *MMR Constructors, Inc. v. JB Grp. of LA, LLC*, No. 22-267, 2024 WL 5155878, at *17 (M.D. La. Dec. 18, 2024).
[23] *F.D.I.C.*, 50 F.3d at 1313.

In the disqualification context, the "appearance of impropriety" doctrine reflects the notion that even ethical conduct may appear to the layman as unethical and thereby could erode public confidence in the judicial system or the legal profession.[24]  The court must balance the likelihood of public suspicion against a party's right to counsel of choice:

> "[T]he disqualification rule requires a balancing of the likelihood of public suspicion against a party's right to counsel of choice." In order to disqualify an attorney under the appearance of impropriety doctrine, "a court must . . . find that the likelihood of public suspicion or obloquy outweighs the social interests which will be served by a lawyer's continued participation in a particular case."  "A disqualification inquiry, particularly when instigated by an opponent, presents a palpable risk of unfairly denying a party the counsel of his choosing."  Therefore, "[a]ll of the facts particular to a case must be considered, in the context of the relevant ethical criteria and with meticulous deference to the litigant's rights."[25]

An attorney's conduct is not, however, governed by standards that can be imputed only to the most cynical members of the public.[26]  Rather, there must be a "reasonable possibility that some identifiable impropriety actually occurred."[27]  Thus, "[a]n attorney may be disqualified only when there is 'a reasonable possibility that some specifically identifiable impropriety' actually occurred and, in light of the interests underlying the standards of ethics, the social need for ethical practice outweighs the party's right to counsel of his choice."[28]

When considering motions to disqualify, a court should first look to its local rules.[29]  Local Civil Rule 83.2.3 of this district adopts the LRPC as its rules of conduct.[30]  The relevant LRPC are virtually identical to their counterparts under the ABA Model Rules of Professional Conduct,[31]

---

[24] *Woods*, 537 F.2d at 813.

[25] *Treece v. Perrier Condo. Owners Ass'n, Inc.*, 559 F. Supp. 3d 530, 541 (E.D. La. 2021) (Morgan, J.) (citations omitted).

[26] *Id.* (quoting *Woods*, 537 F.2d at 813).

[27] *Id.* (quoting *F.D.I.C.*, 50 F.3d at 1316; and citing *Woods*, 537 F.2d at 813).

[28] *United States v. Kitchin*, 592 F.2d 900, 904 (5th Cir. 1979) (quoting *Woods*, 537 F.2d at 812-13).

[29] *In re ProEducation Int'l, Inc.*, 587 F.3d 296, 299 (5th Cir. 2009) (quoting *F.D.I.C.*, 50 F.3d at 1312).

[30] E.D. La. L.R. 83.2.3 (adopting the Rules of Professional Conduct of the Louisiana State Bar Association).

[31] *Compare* LA. RULES OF PRO. CONDUCT r. 1.7, 1.9, 3.7, *with* MODEL RULES OF PRO. CONDUCT r. 1.7, 1.9, 3.7 (AM. BAR ASS'N 2025). *See CEF Funding, L.L.C. v. Sher Garner Cahill Richter Klein & Hilbert, L.L.C.*, No. 09-6623, 2010 WL 2773116, at *2 & nn. 12-13 (E.D. La. July 9, 2010) (Africk, J.) (finding LRPC 1.7, 1.9, and 3.7 identical to

and the "Fifth Circuit has recognized the ABA Model Rules of Professional Conduct . . . as the national standards to consider in reviewing motions to disqualify."[32]  Thus, the Court considers both the LRPC and Model Rules in this analysis.[33]

### B.  <u>Conflict of Interest Rules</u>

Initially, courts are reluctant to disqualify an attorney based on conflict of interest unless the former client moves for disqualification because motions to disqualify may be used as tactical weapons in litigation.[34]   This rule is subject to narrow exceptions[35] when unethical conduct is "manifest and glaring" or "open and obvious" such that the court has a plain duty to act.[36]   Even if movant lacked standing, however, a federal court "is obliged to take measures against unethical conduct occurring in connection with any proceeding before it,"[37] including alleged conflicts of interest.[38]   Such duty is self-imposed by the court's authority "to determine who may practice before [it] and to regulate the conduct of those who do" that is within the court's inherent judicial power.[39]

Lloyd moves to disqualify Person from representing Mrs. Drumm and Hughes based on conflict-of-interest rules, specifically Rules 1.7 (concurrent conflict) and 1.9 (former client

---

Model Rules 1.7, 1.9, and 3.7 (citing *Lange v. Orleans Levee Dist.*, No. 97-987, 1997 WL 668216, at *2 (E.D. La. Oct. 23, 1997) (Clement, J.))).

[32] *W. Bankers Cap., Inc. v. Kirton McConkie, P.C.*, No. 23-5124, 2025 WL 522542, at *3 (E.D. La. Feb. 18, 2025) (Long, J.) (quoting *ProEducation Int'l*, 587 F.3d at 299).

[33] *Id.* (citing *ProEducation Int'l*, 587 F.3d at 299).  Because the relevant rules under the LRPC and Model Rules are virtually identical, the Court interchangeably refers to them.

[34] *In re Yarn Processing Patent Validity Litig.,* 530 F.2d 83, 88, 90 (5th Cir. 1976).

[35] *Yarn Processing*, 530 F.2d at 89.

[36] *Nagle v. Gusman*, No. 12-1910, 2015 WL 1525827, at *3 (E.D. La. Apr. 2, 2015) (Vance, J.) (brackets in original) (quoting *Yarn Processing*, 530 F.2d at 88-89); *see also In re Andry*, No. 15-2478, 2020 WL 5982898, at *10 n.116 (E.D. La. Oct. 8, 2020) (Morgan, J.); *Landmark Am. Ins. Co. v. Gargoyle Mgmt. Inc.*, No. 24-38, 2024 WL 5424896, at *3 (N.D. Tex. Nov. 19, 2024).

[37] *Woods*, 537 F.2d at 810.

[38] *United States v. Roark*, 288 F. App'x 182, 186 (5th Cir. 2008) ("We have recognized a district court's inherent authority to take measures against conflicts of interest when they arise 'in connection with any proceeding before it.'" (quoting *Woods*, 537 F.2d at 510)).

[39] *Id.* (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991); *United States v. Dinitz*, 538 F.2d 1214, 1219 (5th Cir. 1976)).

conflict). Person has appeared for both Hughes and Mrs. Drumm in this case. *See* ECF No. 7. As such, they would both be considered current clients.[40] If they were not both considered current clients, Mrs. Drumm would be considered a former client given the undisputed fact that Person drafted wills for her in 2024 and 2025.

Rules 1.7 and 1.9 of the LPRC and Model Rules govern conflicts of interest. Rule 1.7 states, in pertinent part:

> (a) a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>> (1) the representation of one client will be directly adverse to another client; or
>> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibility to another client, a former client, or a third person or by a personal interest of the lawyer.[41]

Rule 1.9 addresses conflicts with former clients. It states, in pertinent part:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.[42]

The party seeking disqualification bears the burden of proving a conflict of interest requiring disqualification.[43]

---

[40] To determine whether to analyze the issue as a current client or former client conflict, the relationship is assessed at the time the conflict arises. *Swear v. Lawson*, No. 15-6591, 2017 WL 11508947, at *6 (E.D. La. Jan. 19, 2017) (citing *Anderson v. Nassau Cnty. Dep't of Corr.*, 376 F. Supp. 2d 294, 298 (E.D.N.Y. 2005) ("[T]he status of the relationship is assessed as the time that the conflict arises.")); *see also Adaptix, Inc. v. Dell, Inc.*, No. 13-437, 2014 WL 11730482, at *6 (E.D. Tex. Feb. 12, 2014) (citing *Anderson*, 376 F. Supp. 2d at 298 ("[T]he status of the relationship is assessed as the time that the conflict arises.")); *McLain v. Allstate Prop. & Cas. Ins. Co.*, No. 16-843, 2017 WL 1513090, at *1 (S.D. Miss. Apr. 25, 2017) ("[T]he status of the relationship is assessed as the time that the conflict arises . . . ." (citing *Anderson*, 376 F. Supp. 2d at 298)).

[41] La. Rules of Pro. Conduct r. 1.7; Model Rules of Pro. Conduct r. 1.7.

[42] La. Rules of Pro. Conduct r. 1.9; Model Rules of Pro. Conduct r. 1.9.

[43] *Treece*, 559 F. Supp. 3d at 535 (citing *United States v. DeCay*, F. Supp. 2d 679, 683 (E.D. La. 2005) (citing *F.D.I.C.*, 50 F.3d at 1316)); *Galderma Lab'ys, L.P. v. Actavis Mid Atl. LLC*, 927 F. Supp. 2d 390, 398 (N.D. Tex. 2013) ("[Movant] must establish that there is a conflict of interest under the applicable ethics standards and if so, that disqualification is the proper remedy." (citing *Forsyth v. Barr*, 19 F.3d 1527, 1546 (5th Cir. 1994) (placing the burden of establishing a conflict on the client seeking disqualification))).

1.  <u>Concurrent Conflict</u>

Two types of current conflicts may arise:  (1) direct adversity and (2) material limitation.[44]
A directly adverse conflict exists when a lawyer advocates against a person in one matter who is
also the lawyer's client in that matter or in another matter, or when the lawyer is required to cross-
examine a client who appears as a witness in a lawsuit involving another client.[45]

A material limitation conflict exists when there is a significant risk that the representation
of one client will be materially limited by the lawyer's responsibilities to another client.[46]  As
Comment 8 of Model Rule 1.7 explains, a material limitation "conflict of interest exists if there is
a significant risk that a lawyer's ability to consider, recommend or carry out an appropriate course
of action for the client will be materially limited as a result of the lawyer's other responsibilities
or interests."[47]  "The conflict in effect forecloses alternatives that would otherwise be available to
the client"; however, the possibility of future harm "does not itself require disclosure or consent."[48]
The court considers "the likelihood that a difference in interests will eventuate and, if it does,
whether it will materially interfere with the lawyer's independent professional judgment in
considering alternatives or foreclose courses of action that reasonably should be pursued on behalf
of the client."[49]

Initially, Hughes' assertion that there is no conflict because Lloyd has not filed a pleading

---

[44] LA. RULES OF PRO. CONDUCT r. 1.7(a)(1)-(2); MODEL RULES OF PRO. CONDUCT r. 1.7(a)(1)-(2).
[45] MODEL RULES OF PRO. CONDUCT r. 1.7 cmt. 6; *Johnson v. Clark Gin Serv., Inc.*, No. 15-3290, 2016 WL 7017267, at *9 (E.D. La. Dec. 1, 2016) (Brown, J.) (citing MODEL RULES OF PRO. CONDUCT r. 1.7 cmt. 6)); *see Robertson v. AstraZenaca Pharms., LP*, No. 15-438, 2015 WL 5774774, at *4 (E.D. La. Sept. 30, 2015) (Barbier, J.) ("Plaintiff failed to prove a conflict of interest under Rule 1.7. Adams and Reese represents AstraZeneca in this matter and the Malpractice Defendants in a related proceeding in state court. It does not represent AstraZeneca in a case against Malpractice Defendants, or vice versa."); *see also Dresser*, 972 F.2d at 545 ("Unquestionably, the national standards of attorney conduct forbid a lawyer from bringing a suit against a current client without the consent of both parties.").
[46] LA. RULES OF PRO. CONDUCT r. 1.7(a)(2); MODEL RULES OF PRO. CONDUCT r. 1.7(a)(2); *Johnson*, 2016 WL 7017267, at *9.
[47] MODEL RULES OF PRO. CONDUCT r. 1.7 cmt. 8.
[48] *Id.*
[49] *Id.*

against Mrs. Drumm that requires her response is irrelevant to conflict-of-interest analysis. Rule 1.7 does not require both clients be parties to a litigation matter for a concurrent conflict to exist, and courts have applied Rule 1.7 to disqualify counsel even when one current client is not a party.[50] As to whether she must respond to the Complaint, LA. REV. STAT. § 9:3851 requires the authorized person to file the action "on behalf of the principal" and, among other things, "name as defendants the principal, mandatary [or representative], and any other person against who[m] relief is sought."[51] As Mrs. Drumm is a named defendant, she will be required file an answer or responsive pleading even though Plaintiff seeks no relief from her.[52]

Lloyd contends that there is a directly adverse conflict between Mrs. Drumm and Hughes because their respective "interests" are directly adverse (i.e., Mrs. Drumm has an interest in holding Hughes accountable for breaches to fiduciary duties and obligations related to his expenditures of her assets for his personal benefit while Hughes has an interest in avoiding liability, minimizing damages, and defending accusations of breach and misconduct). ECF No. 20 at 10-11. He also asserts that Person's representation of Mrs. Drumm is materially limited due to his duty of loyalty to Hughes that will require him to assert that Hughes has at all times acted in Mrs. Drumm's best interest, precluding Person from advancing any adverse claims that Mrs. Drumm may have against Hughes for any use of her funds for his personal benefit, which Hughes admits to using under the 2017 Power of Attorney. *Id.* at 10-12 (citing ECF No. 8).[53]

---

[50] *See MacNair v. Chubb Eur. Grp. Se.*, No. 23-761, 2025 WL 1115681, at *11-12 (E.D. La. Apr. 15, 2025); *Waneck v. CSX Corp.*, No. 17-106, 2017 WL 11695758, at *7 (S.D. Miss. Aug. 25, 2017) (finding Rule 1.7(a)(2) when one of counsel's clients was not a party to the matter), *R.&R. adopted*, 2017 WL 5157394 (S.D. Miss. Nov. 7, 2017).

[51] LA. REV. STAT. § 9:3851(A), (B); *see* LA. REV. STAT. § 9:3856(A); *see also* LA. REV. STAT. § 9:3851 cmt. e ("The principal must be named as a defendant . . . .").

[52] FED. R. CIV. P. 12(a)(1)(A); *see also Berk v. Choy*, 607 U.S. -----, 2026 WL 135974, at *5 (Jan. 20, 2026) ("Under Federal Rule 12(a)(1), service of the summons and complaint triggers a defendant's obligation to respond . . . .") It is unclear whether Mrs. Drumm has been served. *See* ECF No. 23 ¶ 1 at 2.

[53] In ECF No. 8, Hughes admits to using Mrs. Drumm's assets to make withdrawals to pay for "personal expenses" ($4,000) and a "final sales tax payment" ($546.00) of Hot Square, LLC, the LLC "belonging" to him that failed, and charges on her credit card ($1,132.12) to move and place inventory of Hot Square. ECF No. 8 at 5-6. He also admits

Simultaneous representation of codefendants in litigation is governed by Rule 1.7(a)(2), and a material limitation may exist due to "incompatibility in positions in relation to an opposing party . . . ."[54]  Mrs. Drumm has an interest in ensuring faithful compliance with her directives, including holding Hughes accountable for any breach of that fiduciary duty should it be determined that any expenditures for his personal benefit were unauthorized.[55]  Hughes has an obvious interest in avoiding liability and defending against allegations of breach of his duties to preserve his authority.  The difference of interests is apparent.

Considering Hughes' admission and the applicable law, there is a significant risk that Person's independent professional judgment will be materially limited due to his loyalty to Hughes.  The assertion that Hughes had the authority to self-deal cannot be accepted by Person at Mrs. Drumm's expense, nor could Person pursue the reasonable course of filing a claim against Hughes for breach of fiduciary duty for Mrs. Drumm were the evidence to suggest that Hughes lacked such authority.  Even if such a claim on behalf of Mrs. Drumm were unsuccessful, the potential success is irrelevant to determine if there is a material limitation conflict because the crucial issue is whether counsel is limited in recommending or advocating all possible positions.[56]  As Hughes' counsel, Person could not recommend or advocate proceeding against Hughes.  Mrs. Drumm is entitled to representation by an attorney loyal only to her and who is not limited by any divided loyalty due to obligations owed to another, including Hughes.  Accordingly, the Court finds that Person's simultaneous representation of Mrs. Drumm and Hughes creates a material

---

to using her assets to make electronic transfers, some in the form of checks, for his personal debts and expenses ($26,249.42).  *Id.* at 6.

[54] MODEL RULES OF PRO. CONDUCT r. 1.7 cmt. 23.

[55] *See* LA. REV. STAT. § 9:3854(A)(1)-(2).

[56] *See Johnson*, 2016 WL 7017267, at *11 ("In determining the existence of a conflict, the question is not whether a party's claim is likely to succeed [against the other client] but rather whether an attorney's ability to 'recommend or advocate all possible positions' that a client may take would be 'materially limited' because of the lawyer's 'duty of loyalty' to another client." (quoting MODEL RULES OF PRO. CONDUCT r. 1.7 cmt. 8)).

limitation conflict under Rule 1.7(a)(2).[57]

When a lawyer is faced with a concurrent conflict between clients, the representation may nonetheless be allowed when consent is permissible.[58]   When the representation is subject to consent, each affected client must give "informed consent, confirmed in writing."[59]   "Informed consent requires that each affected client be aware of the relevant circumstances and of the material and reasonably foreseeable ways that the conflict could have adverse effects on the interests of that client."[60]   The information required depends on the nature of the conflict and risks involved.[61] "When representation of multiple clients in a single matter is undertaken, the information must include the implications of the common representation, including possible effects on loyalty, confidentiality and the attorney-client privilege and the advantages and risks involved."[62]

Although the clients may consent to representation notwithstanding a conflict if Rule 1.7(b)'s four conditions  are met,[63] some conflicts are not subject to consent.  For instance, a lawyer cannot ask for consent or provide representation based on consent[64] when (1) the lawyer does not reasonably believe he will be able to provide competent and diligent representation to each affected

---

[57] *Cf. In re Sharp*, 385 So. 3d 1136, 1142, 1144 (La. 2024) (per curiam) (accepting hearing committee's determination that attorney violated Rule 1.7 in attempting to represent criminal defendant accused of abusing his minor daughter and the minor daughter who was the victim of the abuse); 21 FRANK L. MARAIST, N. GREGORY SMITH & THOMAS C. GALLIGAN, JR., LOUISIANA CIVIL LAW TREATISE, LOUISIANA LAWYERING § 8.2 (2025) (describing conflict of interest found in *Sharp* as a material limitation conflict).

[58] *See* LA. RULES OF PRO. CONDUCT r. 1.7(b); MODEL RULES OF PRO. CONDUCT r. 1.7(b); *see also* MODEL RULES OF PRO. CONDUCT r. 1.7 cmt. 14.

[59] LA. RULES OF PRO. CONDUCT r. 1.7(b)(4); MODEL RULES OF PRO. CONDUCT r. 1.7(b)(4).

[60] MODEL RULES OF PRO. CONDUCT r. 1.7 cmt. 18.

[61] *Id.*

[62] *Id.*  "Although the movant bears the burden of proving a conflict of interest for which disqualification is the proper remedy, the attorney asserting the excuse of informed consent has the burden of showing that his or her client has given informed consent." *Waneck*, 2017 WL 11695758, at *8 n.3 (citing *Galderma Lab'ys*, 927 F. Supp. 2d at 398; *El Camino Res., Ltd. v. Huntington Nat'l Bank*, 623 F. Supp. 2d 863, 879 (W.D. Mich. 2007)).

[63] Notwithstanding the existence of a concurrent conflict, a lawyer may represent a client if (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client; (2) the representation is not prohibited by law; (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and (4) each affected client gives informed consent, confirmed in writing.  LA. RULES OF PRO. CONDUCT r. 1.7(b); MODEL RULES OF PRO. CONDUCT r. 1.7(b).

[64] MODEL RULES OF PRO. CONDUCT r. 1.7 cmt. 14.

client; (2) the representation is prohibited by law; and (3) the representation involves the assertion of a claim by one client against another client in the same litigation or other proceeding.[65]

A reasonably diligent lawyer is required to "take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor" and "act with commitment and dedication to the interests of the client and with zeal and advocacy upon the client's behalf."[66]  In light of this duty, a reasonable lawyer in this situation would conclude that it is not possible to competently and diligently represent both Hughes and Mrs. Drumm in this case.  Indeed, given that Hughes is potentially liable to Mrs. Drumm for breach of his fiduciary duty, Person necessarily could not pursue a claim against him for that breach,[67] rendering the representation of Mrs. Drumm materially limited.  Thus, this conflict is not amenable to consent under Rule 1.7(b)(1).

Although "[d]epriving a party of the right to be represented by the attorney of his or her choice is a penalty that must not be imposed without careful consideration,"[68] disqualification of Person from representing Mrs. Drumm in this case is necessary considering the circumstances.[69] Social interests also weigh in favor of disqualifying Person because the concurrent conflict of interest has "the appearance of impropriety in general" and there is "a possibility that a specific impropriety will occur" if Hughes' interests are placed above Mrs. Drumm's interest is ensuring that her agent acts only as directed.[70]  Because Person would necessarily have to temper his representation of Mrs. Drumm in order to defend the conflicting interest of Hughes, there is a

---

[65] *Id.*  at cmts. 15-17.
[66] MODEL RULES OF PRO. CONDUCT r. 1.3 cmt. 1.
[67] *Cf. Waneck*, 2017 WL 11695758, at *8 (finding ¶ (b)(1) applied because nonparty client was potentially liable for party-client's injuries and counsel necessarily "cannot pursue any claim" against nonparty client for the injuries).
[68] *F.D.I.C.*, 50 F.3d at 1313.
[69] *Johnson*, 2016 WL 7017267, at *13 (citing *Bellino v. Simon*, No. 99-2208, 1999 WL 1277535, *4 (E.D. La. Dec. 28, 1999) (Vance, J.) (disqualifying law firm where "serious conflict of interest" existed and could not be cured by waiver); *In re Torch*, Nos. 94-2300, 95-1982, 1996 WL 372020, *2 (E.D. La. July 3, 1996) (Duval, J.) (disqualifying attorneys with concurrent conflicts of interest who did not obtain valid waiver from client); *Brennan v. Brennan*, No. 13-2491, 2013 WL 1897126, *3 (E.D. La. May 6, 2013) (Morgan, J.) (disqualifying law firm where Rule 1.7 conflict was not waived)).
[70] *F.D.I.C.*, 50 F.3d at 1314.

"strong likelihood that 'public suspicion from the impropriety' would outweigh 'any social interests' which would be served" by Person representing Mrs. Drumm in this case.[71]

2.  Former-Client Conflict

Lloyd also requests that Person be disqualified from representing Hughes based on Rule 1.9(a) because Person's "prior representation" of Mrs. Drumm (the drafting of the 2024 and 2025 Wills).  *See* ECF No. 20 at 16.

In the Fifth Circuit, the "substantial relationship" test governs disqualification under Rule 1.9(a) based on a former representation.[72]  This substantial relationship test has two elements: (1) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify and (2) a substantial relationship between the subject matter of the former and present representations.[73]  The test is "categorical in requiring disqualification once a substantial relationship between past and current representation is established."[74]  The test's purpose is to "ensure that lawyers adhere to their twin duties of loyalty and confidentiality to client, both past and present."[75]

The moving party bears the burden of establishing a substantial relationship, which requires the party to "delineate[ ] with specificity the subject matters, issues and causes of action common to prior and current representations."[76]  Then the Court, rather than applying the test "in a

---

[71] *Johnson*, 2016 WL 717267, at *13 (quoting *F.D.I.C.*, 50 F.3d at 1314; and citing *Dresser*, 972 F.2d at 545 (holding that disqualification of attorney was warranted where attorney had concurrent conflict of interest and presented no reason that "some social interest to be served by his representation would outweigh the public perception of his impropriety")).

[72] *Sempiterno in Motion, LLC v. Cajun 417, LLC*, No. 20-681, 2020 WL 5017667, at *6 (E.D. La. Aug. 25, 2020) (Africk, J.)

[73] *United States v. Ryan*, 597 F. Supp. 3d 931, 944 (E.D. La. 2022) (Fallon, J.) (citing *Sempiterno in Motion*, 2020 WL 5017667, at *6 (citing *Am. Airlines*, 972 F.2d at 614)).

[74] *Am. Airlines*, 972 F.3d at 614.

[75] *Ryan*, 597 F. Supp. 3d at 944 (citing *Am. Airlines*, 972 F.2d at 614; *Yarn Processing* 530 F.2d at 890); *accord. Zichichi v. Jefferson Ambulatory Surgery Ctr., LLC*, No. 07-2774, 2008 WL 2859232, at *3 (E.D. La. July 22, 2008) (Vance, J.) (citation omitted).

[76] *Ryan*, 597 F. Supp. 3d at 945 (quoting *Am. Airlines*, 972 F.2d at 614).

16

'mechanical' way so as to forever foreclose a lawyer from representing an interest adverse to a former client,"[77] "engages in a painstaking analysis of the facts and precise application of precedent."[78] "Where conflict of interest or abuse of professional confidence is asserted, the right of an attorney freely to practice his profession must, in the public interest, give way in cases of doubt."[79]

Courts have applied "various glosses" on the substantial relationship test to provide guidance on this fact-intensive inquiry.[80]  The Louisiana Supreme Court has a narrow view, holding that two matters are "'substantially related' when they are so interrelated both in fact and substance that a reasonable person would not be able to disassociate the two."[81]  Courts in this district have noted that the test is less demanding, requiring "common subject matters, issues, and causes of action[ ] but . . . not . . . the same factual scenarios in both cases."[82]  But the Fifth Circuit has recognized an even broader definition of "substantial relationship": "two representations need only involve the same 'subject matter' in order to be substantially related."[83]  "The subject matter 'does not need to be 'relevant' in the evidentiary sense to be 'substantially related.'  It need only be akin to the present action in a way reasonable persons would understand as important to the issues involved."[84]  The Fifth Circuit has applied the substantial relationship test "in cases that fall

[77] *Zichichi*, 2008 WL 2858232, at *3 (quoting *Am. Airlines*, 972 F.2d at 614).

[78] *Am. Airlines*, 972 F.3d at 614 (internal quotations and citation omitted).

[79] *Doe v. A Corp.*, 709 F.2d 1043, 1047 (5th Cir. 1983) (quoting *Chugach Elec. Ass'n v. U.S. Dist. Ct.*, 370 F.2d 441, 444 (9th Cir. 1966)).

[80] *Ryan*, 597 F. Supp. 3d at 945.

[81] *Walker v. State, Dep't of Transp. & Dev.*, 817 So. 2d 57, 62 (La. 2002).

[82] *Parker v. Rowan Cos.*, No. 03-545, 2003 WL 22852218, at *10 (E.D. La. Nov. 25, 2003) (citing cases).

[83] *Ryan*, 597 F. Supp. 3d at 945–46 (quoting *Am. Airlines*, 972 F.2d at 625 (citing *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1341, 1341 (5th Cir. Unit A Oct. 1981); *Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 646 F.2d 1020, 1020 (5th Cir. Unit B June 1981)); *see also Acad. of Allergy & Asthma in Primary Care v. La. Health Serv. & Indem. Co.*, 384 F. Supp. 3d 644, 655 (E.D. La. 2018) (Barbier, J.) (quoting *Am. Airlines*, 972 F.2d at 625).

[84] *Am. Airlines*, 972 F.3d at 657 (quoting *Corrugated Container*, 659 F.2d at 1346).

along a continuum, from those in which the linkage is clear to those in which the connection is nebulous and superficial."[85]

A finding of a substantial relationship triggers two irrebuttable presumptions: (1) that relevant confidential information was disclosed during the former period of representation; and (2) that confidences obtained by an individual lawyer will be shared with the other members of his firm.[86]

While the first element of the substantial relationship test generally requires an attorney-client relationship between the moving party and the attorney he seeks to disqualify, that requirement is not absolute. This element is a standing requirement long required by the Fifth Circuit for a party to move to disqualify opposing counsel based on a conflict of interest.[87] Thus, a moving party that lacks a former-client relationship with the attorney may still seek disqualification pursuant to Rule 1.9 when the court finds an exception under *In re Yarn Processing Patent Validity Litigation* applies[88] or the exercise of its judicial powers to address the motion proper. Even if Lloyd's status as representative of Mrs. Drumm is insufficient to consider him the client in the attorney-client relationship, the Court finds exercise of its judicial powers to address motion proper.

---

[85] *Parker*, 2003 WL 22852218, at *5.

[86] *Patriot Disaster Specialist, LLC v. Travelers Prop. & Cas. Ins. Co.,* No. 23-1687, 2023 WL 11911958, at *2 (E.D. La. Oct. 23, 2023) (Barbier, J.) (quoting *Am. Airlines*, 972 F.2d at 614 & n.1), *reconsideration denied*, 2023 WL 11911959 (E.D. La. Dec. 15, 2023).

[87] Specifically, the first element is based in *In re Yarn Processing Patent Validity Litigation. See Am. Airlines*, 972 F.2d at 614 (quoting *Johnston v. Harris Cnty. Flood Control Dist.*, 869 F.2d 1565, 1569 (5th Cir. 1989) (citing *Corrugated Container*, 659 F.2d at 1345 (citing *Wilson P. Abraham Constr. Corp. v. Armco Steel Corp.*, 559 F.2d 250, 252 (5th Cir. 1977) (citing *Yarn Processing*, 530 F.2d 83)))); *see also Andry*, 2020 WL 5982898, at *11 (equating the first element of the substantial relationship test to a standing requirement in light of *Yarn Processing*); *Ryan*, 596 F. Supp. 3d at 948 (finding the first element not applicable in the context of the Government moving to disqualify opposing counsel and noting opposing counsel "does not argue that the Government lacks standing to pursue disqualification").

[88] *See OneBeacon Ins. Co. v. T. Wade Welch Assocs.*, No. 11-3061, 2012 WL 393309, at *4 (S.D. Tex. Feb. 6, 2012) ("Raney's relationship with the Welch firm is an employee-employer relationship, not an attorney-client relationship. Thus, the court would normally need to determine whether one of [*Yarn Processing*'s] 'narrow exceptions' to the rule require the movant to have had an attorney-client relationship exists.").

However, Lloyd has not met his burden in proving the subject matter of Person's representation of Hughes in this matter is substantially related to his prior drafting of wills for Mrs. Drumm in 2024 and 2025. As Lloyd states, Person's current representation of Hughes concerns "defending claims of abuse" of his powers under the 2017 Power of Attorney, specifically claims of unauthorized self-dealing. ECF No. 20 at 16. The 2017 Power of Attorney provides no explicit power to either Lloyd or Hughes regarding Mrs. Drumm's new wills. Thus, Hughes is not defending any claims with regard to the 2024 and 2025 Wills, and it is unclear whether Hughes could pursue such claims in this case given that Mrs. Drumm is not deceased.[89] Thus, Lloyd's argument that the representations are substantially related because they both concern Mrs. Drumm's "donative intent" fails.

Further, Lloyd's other bases (her "mental capacity" and "estate") appear "general[ ] superficial connection[s]" not sufficient to establish a substantial relationship at this point in the proceedings.[90] Should Lloyd provide "greater specificity [as to] the scope of the prior representation and [ ] demonstrate precisely how the subject matters of the prior representation are connected with the matters embraced within the pending suit,"[91] this matter may be reconsidered at that time. For now, however, Lloyd has not demonstrated that a reasonable person would understand Person's drafting of the 2024 and 2025 Wills to be substantially related to the current issues in this case regarding Hughes' alleged breach of his duties under the 2017 Power of Attorney. *See* ECF No. 20 at 16. Accordingly, Lloyd has failed to meet his burden of proving a

---

[89] *See* LA. CIV. CODE art. 1605 ("A testament has no effect unless it is probated in accordance with the procedures and requisites of the Code of Civil Procedure."); LA. CODE CIV. PROC. 2931 ("A probated testament may be annulled only by a direct action brought in the succession proceeding against the legatees, the residuary heir, if any, and the executory, if he has not been discharged. The action shall be tried as a summary proceeding.").
[90] *Ryan*, 597 F. Supp. 3d at 946 (quoting *Duncan*, 646 F.2d at 1033).
[91] *Id.* (quoting *Duncan*, 646 F.2d at 1033).

former-client conflict of interest requires disqualification of Person from representing Hughes in this matter.

### C. **Lawyer-Witness Rule**

Lloyd also asserts that Person cannot represent Hughes because Person is necessary witness in this matter. Lloyd, as movant, bears the burden to show that disqualification is required by Rule 3.7.[92]

Rule 3.7 states, in pertinent part:

(a)  A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
  (1)  The testimony relates to an uncontested issue;
  (2) The testimony relates to the nature and value of legal services rendered in the case; or
  (3) Disqualification of the lawyer would work substantial hardship on the client.[93]

"The Rule serves two distinct purposes: protecting the client and protecting the integrity of the court proceeding."[94] It protects the client from a potential conflict of interest that would occur when an attorney is forced to offer testimony that materially differs from the testimony offered by his client.[95] It also protects the integrity of judicial proceedings as well because, "[w]hen an attorney is placed in both positions[,] the Court runs the risk that a jury will assign too much, or possibly too little, weight to the lawyer's testimony."[96]

"A necessary witness is one whose testimony is relevant, material, and unobtainable elsewhere."[97] Because Rule 3.7 is explicitly "limited to those circumstances where the lawyer is

---

[92] *W. Bankers Cap.*, 2025 WL 522542, at *4 (citing *Treece*, 559 F. Supp. 3d at 536).

[93] LA. RULES OF PRO. CONDUCT r. 3.7; MODEL RULES OF PRO. CONDUCT r. 3.7.

[94] *Spotted Cat, LLC v. Bass*, No. 13-6100, 2014 WL 4072024, at *3 (E.D. La. Aug. 18, 2014) (Milazzo, J.) (citing *F.D.I.C.*, 50 F.3d at 1315).

[95] *Id.* (citing MODEL RULES OF PRO. CONDUCT r. 3.7 cmt. 6 (2011)).

[96] *Id.* (citing cases); *see also* MODEL RULES OF PRO. CONDUCT r. 3.7 cmt. 3.

[97] *Treece*, 559 F. Supp. 3d at 536 (quoting *Painter v. Suire*, No. 12-511, 2014 WL 3858510, at *2 (M.D. La. Aug. 5, 2014)); *W. Bankers Cap.*, 2025 WL 522542, at *4 (quoting *Treece*, 559 F. Supp. 3d at 536); *accord. Spotted Cat*, 2014 WL 4072024, at *3 (quoting *CEF Funding*, 2010 WL 2773116, at *2 n.15).

likely to be a necessary witness at a trial," it does not apply to pretrial proceedings.[98]  And if the court determines that a witness is not "necessary," the court need not analyze the policy considerations such as the appearance of impropriety."[99]

Testimony is relevant under Rule 401 of the Federal Rules of Evidence if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action.[100]  Testimony is "'material' if it has 'some logical connection with the consequential facts' or if it is '[o]f such a nature that knowledge of it would affect a person's decision making.'"[101]  Testimony is not "unobtainable from elsewhere" when the attorney's testimony is available from another source and would be cumulative of that other source's testimony.[102]

Lloyd seeks judicial review of Hughes' acts as representative of Mrs. Drumm pursuant to LA. REV. STAT. § 9:3851.[103]  In determining whether a plaintiff is entitled to relief under LA. REV. STAT. §§ 9:3851 – 3856, the court must consider the procuration and may consider "any . . . relevant factor[ ]."[104]  Although §9:3854(C) provides an illustrative list of factors "aimed at

---

[98] *CEF Funding*, 2010 WL 2773116, at *2 (citing cases).

[99] *Walker v. Beaumont Indep. Sch. Dist.*, No. 15-379, 2015 WL 12803456, at *4 (E.D. Tex. Dec. 2, 2015) (citing *Horaist*, 255 F.3d at 267 n.5 ("Because Toce is not a necessary witness, we need not reach the question whether the substantial hardship to Horaist outweighs the appearance of impropriety and other policy considerations.")).

[100] *Treece*, 559 F. Supp. 3d at 536 (citing FED. R. EVID. 401).  "[A]ny tendency" indicates that Rule 401 sets a low bar.  *Echeverry v. Jazz Casino Co.,* 988 F.3d. 221, 235 (5th Cir. 2021).  For a fact to be "of consequence," under the substantive law of the case, the "proposition to be proved must be . . . probative of a matter that is in issue." *Treece*, 559 F. Supp. 3d at 536 (quoting *United States v. Hall*, 653 F.2d 1002, 1005 (5th Cir. Unit A Aug. 1981)).

[101] *Treece*, 559 F. Supp. 3d at 537 (*Material*, BLACK'S LAW DICTIONARY (11th ed. 2019)).

[102] *Horaist*, 255 F.3d at 267; *see also United States v. Starnes*, 157 F. App'x 687, 693-94 (5th Cir. 2005) ("A lawyer is not 'likely to be a necessary witness' when evidence pertaining to each matter to which he could testify is available from another source." (citing *Horaist*, 255 F.3d at 267)).

[103] LA. REV. STAT. §§ 9:3851 – 3856 apply "to a procuration and a representative in the same manner as it applies to a mandate and a mandatary, respectively, and allows an action against a representative for violating any duty or failing to fulfill any obligation in the procuration." LA. REV. STAT. § 9:3856(A).  Although Lloyd has not amended his complaint, his filings suggest he will also seek to challenge the validity of the 2024 and 2025 wills.

[104] LA. REV. STAT. § 9:3854(C); *accord. Benoist v. Jackson Nat'l Life Insurance Co.*, 356 So. 3d 448, 455 (La. App. 1 Cir. 2022) (interpreting LA. REV. STAT. § 9:3854(C)); LA. REV. STAT. § 9:3854 cmt. d ("The list of factors for the court to consider offers guidance. It is illustrative and not exhaustive.").

protecting the well-being of the principal and preventing various forms of elder abuse,"[105] the court may consider any factor in reaching that decision as long as it is relevant.[106]

Lloyd asserts that, because Person drafted the 2024 and 2025 Wills, Person is a necessary witness as to Mrs. Drumm's mental capacity and impairments as well as any undue influence exercised by Hughes. ECF No. 20 at 17.[107] Because "[f]raud, duress, or undue influence" is an enumerated relevant factor under § 9:3854(C),[108] Person's potential trial testimony as to any undue influence by Hughes on Mrs. Drumm is relevant and material testimony. But again, the 2024 and 2025 Wills are not at issue in this litigation. Further, Lloyd fails to identify any specific instance in which Person is alleged to have witnessed Hughes' violation of his duties under the 2017 Power of Attorney.

Moreover, Mrs. Drumm could be a source of evidence on this issue if she were competent to testify. Given the parties' apparent agreement that her *current* mental condition and confusion may preclude same, she may not be available. Although Hughes is also potential source, he has a personal interest directly adverse to Plaintiff's interest in that evidence. Thus, absent Mrs. Drumm's ability to testify, Person could be a necessary witness because, unlike cases in which the attorney's testimony was merely cumulative or corroborative of the client's testimony,[109] Person's testimony on this hotly contested issue cannot be characterized as merely cumulative and corroborative. And while medical evidence may also be available, Person may be the only source

---

[105] Elizabeth R. Carter, *Fiduciary Litigation in Louisiana: Mandataries, Succession Representatives, and Trustees*, 80 LA. L. REV. 661, 691 (2020).

[106] *Cf. Rhymes v. Rhymes*, 125 So. 3d 377, 381-82 (La. 2013) (finding court may consider non-enumerated factor for determining the amount and duration of child support as long as the factor is relevant for the circumstances as LA. CIV. CODE art. 112 (B) states "The Court shall consider all relevant factors in determining the amount and duration of final support. Those factors may include . . . .").

[107] In his Opposition, Hughes acknowledges that Person drafted new wills for Mrs. Drumm after her stroke, and that she executed same. ECF No. 24 at 2.

[108] *See* LA. REV. STAT. § 9:3854(C)(7).

[109] *See Horaist*, 255 F.3d at 267 n.4 (holding that attorney was not a necessary witness where non-controversial testimony regarding breast augmentation was cumulative of plaintiff's testimony); *Treece v. Perrier Condo. Owners Ass'n, Inc.*, 559 F. Supp. 3d at 537.

that can testify as to her capacity *at the relevant times*. Thus, Person may be a necessary witness, absent Mrs. Drumm's testimony on the issues. At this point, however, whether other sources of information are available is entirely speculative and insufficient to support a Rule 3.7 disqualification. Having not found that Person is, at this time, a necessary witness under Rule 3.7, the Court need not address whether disqualification would impose substantial hardship.

Moreover, even if Person were a necessary witness, Rule 3.7 does not preclude an attorney who is a necessary witness from participating pretrial. Accordingly, Rule 3.7 would not require Person's disqualification at this point. Plaintiff may re-urge the disqualification based on Rule 3.7 if Mrs. Drumm is not capable of testifying as to those issues, no other source of evidence is available, which may become clearer as trial approaches, and disqualification would not impose substantial hardship.

## V.    CONCLUSION

Given the nature of the breach of fiduciary duty claims asserted and the need to ensure that Mrs. Drumm is represented by counsel with no divided loyalty, Person cannot represent both Mrs. Drumm and Hughes. Even if Mrs. Drumm and Hughes are not currently directly adverse to one another, there is no doubt that Person's representation of Mrs. Drumm would be materially limited by his duties to Hughes. Although Person may ultimately be a necessary witness in this case, at this point, it is not clear whether any evidence sought from him would be available from any other source or whether disqualification would impose a substantial hardship. Regardless, Rule 3.7 prohibits representation at trial, but generally does not prohibit counsel from participating in pretrial proceedings.

Accordingly, for the foregoing reasons,

IT IS ORDERED that Plaintiff Lloyd E. Drumm's Motion to Disqualify Counsel is GRANTED IN PART AND DENIED IN PART. Person is disqualified from representing Defendant Caroline Drumm but not disqualified from representing Defendant Hughes Drumm.

IT IS FURTHER ORDERED Defendants Caroline E. Drumm and Hughes D. Drumm, Jr.'s *Ex Parte* Motion to Enroll as Counsel of Record is GRANTED IN PART AND DENIED IN PART. Person may enroll as counsel for Defendant Hughes Drumm but may not enroll as counsel for Defendant Caroline Drumm.

IT IS FURTHER ORDERED Plaintiff Lloyd E. Drumm's request for an order compelling production of documents is DENIED AS PREMATURE.

IT IS FURTHER ORDERED that Plaintiff Lloyd Drumm and Defendant Hughes Drumm confer, within 30 days, regarding the selection of counsel agreeable to both to represent Defendant Caroline Drumm.

New Orleans, Louisiana, this _____28th_____ day of January, 2026.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE